[No. B202854. Second Dist., Div. Six. Dec. 29, 2008.]

Estate of LESLEY LOREN SHELLENBARGER, Deceased.
LAURA A. BARNES, Petitioner and Appellant, v.
CLIFFORD SHELLENBARGER, Objector and Respondent.

---

## COUNSEL

Paniz & Kossoff, Kenneth Kossoff; Lascher & Lascher and Wendy C. Lascher for Petitioner and Appellant.

Law Offices of Mary Quin and Mary Quin for Objector and Respondent.

---

## OPINION

**YEGAN, J.**—One hundred years ago our Supreme Court warned that " '[s]uccession to estates is purely a matter of statutory regulation, which cannot be changed by courts' " and that " '[i]t is vain to argue against the injustice of the rule . . . .' " (*Estate of De Cigaran* (1907) 150 Cal. 682, 688 [89 P. 833].) This rule of law, i.e., strict adherence to the laws of succession, has not changed. (See *Estate of Griswold* (2001) 25 Cal.4th 904, 924 [108 Cal.Rptr.2d 165, 24 P.3d 1191].) The Court of Appeal follows the law as declared by our California Supreme Court even if we think that the rule of law is unwise or the result of the application of the rule is unfair. (See, e.g., *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384 [127 Cal.Rptr.2d 917] (conc. opn. of Yegan, J.).) Here it is unfair that father should reap a financial windfall after the death of his son. This is so because father never even saw his son for the 42 years he lived. We hold that a probate court may not, on principles of equity, disinherit a natural parent who abandons a child who later dies intestate. (Prob. Code, § 6400.)[1]

Laura A. Barnes, administrator of the estate of Lesley Loren Shellenbarger, appeals from an order denying her petition to exclude the natural father's entitlement to distribution in decedent's estate. (§§ 11700, 1303, subds. (f), (g).) We affirm.

---

[1] All statutory references are to the Probate Code.

*Facts and Procedural History*

Lesley was born in June of 1963 and died intestate in April 2005. He had no surviving spouse, registered domestic partner, child, or issue from a predeceased child. Lesley is survived by his mother/appellant, Laura A. Barnes (Laura), and his natural father, Clifford Shellenbarger (Clifford), who were married for a short time more than 40 years ago.

In 1962 Clifford moved to Michigan, leaving Laura and their one-year-old daughter Michele in New Mexico with no means of support. Laura was pregnant with Lesley.

In 1964, Clifford obtained a judgment of marital dissolution and was ordered to pay $10 a week for Michelle's and Lesley's support, commencing in March 1964 and payable to a Michigan court for delivery to Laura. In 1977, the Michigan court increased support to $25 a week per child.

After Lesley died, Laura petitioned to probate Lesley's estate and was appointed administrator. Laura also registered the Michigan judgment and support order to collect child support in a superior court action (collection action) of which we take judicial notice. (*Shellenbarger v. Shellenbarger* (Super. Ct. Ventura County, No. D314927).) Laura claimed the support arrearage with interest was $34,306.02 and that Clifford's interest in the estate was not exempt from execution. The collection action was dismissed with prejudice on October 17, 2006, after Clifford agreed to pay Laura an unspecified amount from his share of the estate.

Three months later, Laura filed a petition for instructions to determine entitlement to estate, alleging that Clifford abandoned Lesley and should not take as an intestate heir. (§ 11700 et seq.) Laura stated that Clifford never visited or spoke to Lesley and that Clifford "has not paid one dime to support his children." Clifford objected to the petition, claiming that he paid child support but the records were either lost or had been destroyed.

■ At the hearing on the petition, the trial court phrased the issue as follows: "[C]an a bad guy luck into an inheritance, and is there an equitable way to avoid it?" It answered the second question with a "no." Laura contends that Clifford forfeited his right to take as an intestate heir because he abandoned Lesley and paid no child support. At oral argument she stressed that she was entitled to an evidentiary hearing to prove the underlying factual predicate. Appellant argues that the trial court's order is tantamount to a nonsuit and that, on review, we must accept appellant's version of the facts. We disagree. Section 11704 provides that the probate court "shall consider as evidence" any statement in the petition for instructions and any statement in a

responsive pleading. (See Ross, Cal. Practice Guide: Probate (The Rutter Group 2007) ¶ 15:453.1, p. 15-118.1.)

The record shows the Michigan divorce decree and the February 22, 1977 order modifying support which also orders that a $740 child support arrearage "is hereby forgiven." In the collection action, Laura calculated the support arrearage was $6,740 as of February 21, 1977, if Clifford paid no support. Based on the Michigan order, the inference can be made that Clifford paid some child support (approximately $6,000) before child support was increased. However, our opinion would be the same if Clifford paid no support whatsoever. This is an equitable consideration, which is inapposite to the law of intestate succession. For the same reason, it does not matter that Clifford never even saw his son.

### Law of Intestate Succession: The Statutory Will

■ Section 6400 states: "Any part of the estate of a decedent not effectively disposed of by will passes to the decedent's heirs as prescribed in this part." It applies to decedents who die after January 1, 1985. (§ 6414, subd. (a).) Thus, the Legislature has, in essence, written a "default statutory will" for those who die without a will.

■ Section 6402, subdivision (b) provides that where the decedent dies intestate with no surviving spouse, registered domestic partner, or issue, that his or her estate passes to decedent's parents equally. The term "parent" includes "natural parents" (§ 6450, subd. (a)) and a natural parent-child relationship is established where "[a] court order was entered during the father's lifetime declaring paternity." (§ 6453, subd. (b)(1).)

In *Estate of Griswold, supra,* 25 Cal.4th 904, decedent was born out of wedlock and died intestate without issue. Although decedent's parents were dead, two half siblings claimed they were intestate heirs because decedent's natural father admitted paternity in a 1941 Ohio bastardy proceeding. The natural father later married and had two children (i.e., the half siblings) but did not tell the children about decedent.

■ Our Supreme Court held that the half siblings could take as intestate heirs because the 1941 Ohio judgment was a court order " 'entered during the father's lifetime declaring paternity' (§ 6453, subd. (b)(1)) . . . ." (*Estate of Griswold, supra,* 25 Cal.4th at p. 924.) The court acknowledged "that a natural parent who does no more than openly acknowledge a child in court and pay court-ordered child support may not reflect a particularly worthy predicate for inheritance by that parent's issue, but section 6452 provides in unmistakable language that it shall be so. While the Legislature remains free

to reconsider the matter and may choose to change the rules of succession at any time, this court will not do so under the pretense of interpretation." (*Id.*, at p. 924.)

■   Where the decedent is born out of wedlock and dies intestate (i.e., *Griswold*), the natural parent does not inherit through the child unless the parent acknowledged the child and contributed to the child's support or care. (§ 6452.) Had Lesley been born out of wedlock, Clifford's failure to pay support would be relevant. But Lesley was conceived during the marriage and Clifford acknowledged paternity in the Michigan divorce decree. (*Weir v. Ferreira* (1997) 59 Cal.App.4th 1509, 1520–1521 [70 Cal.Rptr.2d 33] [divorce decree describing children of the marriage is determinative for inheritance purposes].) This parental finding was restated in the 1977 Michigan order modifying support that Joanne registered as a sister state judgment.

"Although the [Michigan] marital dissolution action was not denominated as one brought pursuant to the [Uniform Parentage Act], . . . the issue adjudicated (parentage) was identical with the issue that would have been presented in a UPA action, and it should be given the same effect as between the parties and their privies. [Citation.] We thus decide that the interlocutory and final judgments of dissolution declaring [Clifford's] paternity of [Lesley], both of which were entered during [Lesley's] lifetime, meet the requirements of section 6453, subdivision (b)(1). The parties to the dissolution and those in privity with them are collaterally estopped to deny respondent's rights of intestate succession . . . ." (*Weir v. Ferreira, supra,* 59 Cal.App.4th at p. 1521.)

■   Clifford's parental neglect may have been grounds for terminating parental rights when Lesley was a minor, but that did not happen. (See Fam. Code, § 7822, subd. (b); *Jackson v. Fitzgibbons* (2005) 127 Cal.App.4th 329, 336 [25 Cal.Rptr.3d 478] [where parental rights are terminated based on abandonment, parent has no right to intestate succession].) Laura cites no authority, and we have found none, that parental rights can be retroactively terminated after the intestate death of the natural parent's child. Appellant's reliance on *Estate of Bose* (1910) 158 Cal. 428 [111 P. 258] is inapposite. This case holds that a widow who abandoned decedent a week after their marriage was estopped from seeking a family allowance for maintenance and support. The statutory right to a family allowance (§ 6540 et seq.) does not depend upon heirship or equate with the right of inheritance, but instead, rests upon the claimant's right to support at the time of decedent's death. (*Estate of Hafner* (1986) 184 Cal.App.3d 1371, 1398 [229 Cal.Rptr. 676]; Ross, Cal. Practice Guide: Probate, *supra,* ¶ 7:80.7, p. 7-23.)

*Conclusion*

■ We accordingly reject the argument that the failure to pay child support or the lack of a meaningful parent-child relationship affects Clifford's rights as an intestate heir. If that were the rule, it would rewrite the laws of succession. "In addition, a rule looking to the parties' overall relationship in order to do equity in a given case, . . . would necessarily be a vague and subjective one, inconsistently applied, in an area of law where 'consistent, bright-line rules' [citation] are greatly needed." (*Estate of Ford* (2004) 32 Cal.4th 160, 170–171 [8 Cal.Rptr.3d 541, 82 P.3d 747].) Our Supreme Court has repeatedly stated that "[i]ntestate succession is wholly statutory. Any inequality which results from the operation of [section 6402] has been engendered by the Legislature itself." (*Estate of McDill* (1975) 14 Cal.3d 831, 840 [122 Cal.Rptr. 754, 537 P.2d 874]; see also *Estate of Leslie* (1984) 37 Cal.3d 186, 199 [207 Cal.Rptr. 561, 689 P.2d 133] [right of succession not an inherent or natural right, but purely a creature of statute].)

The judgment is affirmed. Clifford is awarded costs on appeal.

Gilbert, P. J., and Perren, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 25, 2009, S170373.