Filed 10/23/2017

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| JOSE FRANCISCO AVILES et al., | 2d Civil No. B281420 |
| Petitioners and Respondents, | (Super. Ct. No. 56-2016-00479394-PR-TR-OXN) |
| v. | (Ventura County) |
| TRACY J. SWEARINGEN, | |
| Appellant. | |

   In this case of first impression, we apply newly enacted Probate Code section 21310. If, in theory, this could lead to a debatable result, so be it. There is no "play in the joints" in probate law, as Chief Justice Rehnquist would say. We "strictly" follow probate law as given to us by the Legislature. (*Estate of Shellenbarger* (2008) 169 Cal.App.4th 894, 896.)

   Tracy J. Swearingen appeals from an order denying her petition to enforce a no contest clause and disinherit Jose Francisco Aviles as a trust beneficiary of the Margaret B. Chappell Living Trust. The trial court found that the trust Third Amendment and Restatement (hereafter Third Amendment), which contains general language of incorporation of a prior trust amendment, did not specifically refer to a no contest clause. It

also found that the Third Amendment was not a "protected instrument" within the meaning of Probate Code section 21310.[1] Finally, it ordered appellant's removal as trustee, pendente lite, without prejudice to her reinstatement should she prevail at trial on Aviles' petition to invalidate the Third Amendment.

We affirm the order denying the petition to disinherit respondent. The purported appeal from the order removing appellant as trustee pending trial is dismissed because it is not a final appealable order. (§§ 1304, subd. (a); 17200, subd. (b)(1); *Estate of Keuthan* (1968) 268 Cal.App.2d 177, 180.)[2]

*Facts and Procedural History*

Margaret B. Chappell (Peggy) created the Margaret B. Chappell Living Trust in 2010 and amended the trust three times before succumbing to cancer on January 12, 2016. The original trust instrument was a comprehensive 34-page document drafted by counsel. It provided that Peggy's boyfriend, respondent Jose Francisco Aviles, would receive all the trust assets on Peggy's death. The First Amendment provided that Aviles would receive Peggy's real property and directed that the remaining trust assets be distributed as follows: 50 percent to Peggy's brother and 50 percent to be divided equally between the children of Peggy's nieces and nephews. The Second Amendment provided that Aviles would receive Peggy's real property and 50

---

[1]All statutory references are to the Probate Code.
[2]At the eleventh hour, the parties declare that they have settled the underlying case. They ask for dismissal of the appeal. The request is denied. It is untimely. In addition, we elect to reach the merits of the first impression issue which has statewide importance to the probate bar.

percent of the remaining trust assets would be distributed to her brother and 50 percent to Peggy's godchildren.

In 2015, Peggy suffered a relapse of cancer and entrusted appellant with her estate planning documents. Peggy complained to others that appellant had read the trust documents. Appellant confronted Peggy about the disposition of trust assets. In the months that followed, Peggy executed the Third Amendment without the advice of counsel.[3] The Third Amendment changed the trust remainder beneficiary provision to make appellant the sole remainder beneficiary and successor trustee. It incorporated by reference the unchanged provisions of the Second Amendment and provided: "These Articles once included, and along with any Articles not amended, shall result in the Third Amendment and Restatement of the Trust Agreement for the Living Trust of Margaret B. Chappell."

After Peggy died, Aviles filed a petition to invalidate the Third Amendment on the ground that it was the product of undue influence and financial abuse. The petition alleged that appellant and her husband owned and operated a marijuana dispensary, that they supplied Peggy marijuana without a medical approval, that Peggy became addicted to marijuana, and was a dependent adult within the meaning of section 21366. It also alleged that appellant was Peggy's "care custodian" (§21362), and coerced Peggy to disinherit her brother and godchildren and name appellant remainder beneficiary of the trust. While Peggy

---

[3] Where, as here, the settler has substantial assets, he or she should not attempt to dispose of them without the guiding hand of counsel. As Rankeillor, the lawyer, said, "I often think the happiest consequences seem to flow when a gentleman consults his lawyer, and takes all the law allows him." (Stevenson, Kidnapped (1913) p. 268.)

was on her deathbed, appellant and her agents allegedly took 1. a valuable collection of vintage wine from Peggy's home; 2. her Mercedes; 3. an expensive collection of purses; 4. Peggy's jewelry box; and 5. control of Peggy's bank accounts including a safe deposit box that held a $100,000 jewelry collection.

Appellant opposed the petition and filed a counter petition to disinherit Aviles alleging that he violated the no contest clause in the Second Amendment by challenging the Third Amendment.

Thereafter, respondent filed a motion to enjoin appellant from using trust assets to fund her defense of the trust contest. (See *Doolittle v. Exchange Bank* (2015) 241 Cal.App.4th 529, 546 [trial court may enjoin trustee's use of trust funds to defend a challenge to a trust where there is a likelihood of prevailing on the contest].) The motion and appellant's petition to disinherit respondent were heard at the same time. Denying the petition, the trial court ruled that the Third Amendment was not a "protected instrument" as defined by section 21310 because the instrument did not contain a no contest clause or expressly reference the no contest clause in the Second Amendment. With respect to the motion to enjoin appellant's use of the trust funds to defend against the petition to invalidate the Third Amendment, the trial court removed appellant as trustee, pendente lite, and appointed a professional fiduciary to act as trustee.

*No Contest Clause*

Because there is no conflict or question of credibility in the relevant extrinsic evidence, interpretation of the trust instrument is a question of law for our independent review. (*Burch v. George* (1994) 7 Cal.4th 246, 254.) An in terrorem or no

contest clause is a provision in an otherwise valid trust instrument that, if enforced, penalizes a beneficiary for filing a pleading in any court. (§ 21310, subd. (c).) The term "pleading" means a petition, complaint, cross-complaint, objection, answer, response, or claim. (§ 21310, subd. (d).)

No contest clauses are valid in California and are favored by the public policies of discouraging litigation and giving effect to the settlor's expressed purposes. (*Burch v. George*, *supra*, 7 Cal.4th at p. 254.) Competing public policies, however, also exist. The court must strictly construe a no contest clause because it works a forfeiture and may not be extended beyond its plainly intended function. (*Ibid*.) Our courts have narrowly construed no contest clauses even where the trust amendment expressly confirms and ratifies the provisions of the trust. (*Perrin v. Lee* (2008) 164 Cal.App.4th 1239, 1242; *Townsend v. Townsend* (2009) 171 Cal.App.4th 389, 392.)

Section 21311, subdivision (a) defines what no contest clauses can be enforced and provides that a no contest clause may be enforced against "(1) [a] direct contest that is brought without probable cause." A "direct contest" is defined in section 21310, subdivision (b) to mean: "[A] contest that alleges the *invalidity of a protected instrument or one or more of its terms*, based on one or more of the following grounds: [¶] . . . [¶] (4) Menace, duress, fraud, or undue influence." (Italics added.)

Section 21310, subdivision (e)(2) defines a "protected instrument" to mean an instrument "that contain[s] the no contest clause" or an instrument that "is in existence on the date that the instrument containing the no contest clause is executed and is expressly identified in the no contest clause, either individually or as part of an identifiable class of instruments, as

5

being governed by the no contest clause." Pursuant to this statute, the settlor may "either incorporate by reference or republish in full a no-contest clause in a . . . trust amendment by expressly referring to a no-contest clause contained in an instrument previously executed by the [settlor]." (Ross & Cohen, Cal. Practice Guide: Probate (The Rutter Group 2016) [¶] 15:85.7, p. 15-37.)

Appellant concedes the Third Amendment does not have a no contest clause. At issue is whether the Third Amendment is a "protected instrument" because it incorporates by reference the no contest clause in the Second Amendment without specifically mentioning it. Appellant claims that Peggy intended to include the no contest clause in the Third Amendment because the Third Amendment incorporates all of the terms of the Second Amendment not amended by the Third Amendment. Article 16 of the Second Amendment, which contains the no contest clause, states that a "protected instrument" shall include "any and all amendments" to the Trust Agreement.

The no contest clause and its application to future trust amendments is strictly construed. (§ 21312.) Under former law (§ 21305, subd. (a)) and current law (§ 21310, subd. (e)(2)), the no contest clause is not enforceable unless it is set forth verbatim in the Third Amendment or the Third Amendment expressly refers to the no contest clause in the Second Amendment. Section 21310, subdivision (e), which became operative January 1, 2010, requires that the "protected instrument" either contain the no contest clause (subd. (e)(1)), or that the instrument be "*in existence on the date that the instrument containing the no contest is executed and is expressly*

6

*identified in the no contest clause . . . .*" (Subd. (e)(2), italics added.)

Simply stated, the no contest clause in the Second Amendment, does not apply to future trust amendments, such as the Third Amendment, unless the amendment specifically refers to the no contest clause.

In 2008, the Legislature enacted Section 21310 based on the recommendation of the Law Revision Commission to simplify the law, to balance conflicting public policies, and to limit the enforcement of no contest clauses to direct contests brought without probable cause, to creditor claims, and to challenges to the transferor's (i.e., settlor's) ownership of property at time of transfer. (*Donkin v. Donkin* (2013) 58 Cal.4th 412, 426.) The Law Revision Commission warned "that other public policy concerns 'can trump a transferor's intention to create a no contest clause.' [Citation.]" (*Id.* at p. 425.) It noted that "'[e]xperienced practitioners are well aware that the no contest clause is a favorite device of undue influencers and those who use duress to become the (unnatural) object of a decedent's bounty.'" (Recommendation on Revision of No Contest Clause Statute (Jan. 2008) 37 Cal. Law Revision Com. Rep. (2007) p. 388 (Revision Rep.).)

Appellant claims that the no contest clause in the Second Amendment trumps section 21310, subdivision (e)(2), but that would violate section 21314 which provides that "[t]his part applies notwithstanding a contrary provision in the instrument." (See *Giammarrusco v. Simon* (2009) 171 Cal.App.4th 1586, 1615 [if instrument contains a no contest clause that is inconsistent with the revised law, the clause will be disregarded].) Although no contest clauses are favored by the public policies of

discouraging litigation and giving effect to the trustor's intent, they are also disfavored by the policy against forfeitures and may not extend beyond what plainly was the settlor's intent. (*Meyer v. Meyer* (2008) 162 Cal.App.4th 983, 991.) "In determining the intent of the [settlor], a no contest clause shall be strictly construed." (§ 21312.)

We cannot say that Peggy unequivocally expressed her intent to apply the no contest clause to petitions contesting trust amendments that are the product of fraud or undue influence. Application of the clause here would defy common sense. "An instrument that is the product of menace, duress, fraud, or undue influence is not an expression of the transferor's free will and should not be enforced." (Revision Rep., *supra*, 37 Cal. Law Revision Com. Rep. at p. 370.) We are guided by the fundamental truism that - put bluntly - the law is not an ass. (See Charles Dickens, *Oliver Twist* 333 (Dover Thrift ed., Dover Publications 2002) (1983) ["'If the law supposes that,' said Mr. Bumble, squeezing his hat emphatically in both hands, 'the law is a ass - a idiot'"].)[4]

---

[4]Appellant claims that the Third Amendment is actually a restatement of the Second Amendment by which all the terms of the Second Amendment not amended by the Third Amendment are restated in the Third Amendment. We reject the argument because the no contest clause applies to "any and all amendments" of the trust agreement and says nothing about restatements of the trust. Generic no contests clauses, which is what we have here, are obsolete. (*Perrin v. Lee, supra*, 164 Cal.App.4th at p. 1249.) "Estate planning practitioners must draft each no contest clause with particularity, considering in each case which instruments are intended to be subject to the no

*Pendente Lite Order Removing Appellant as Trustee*

Appellant contends that the trial court abused its discretion in removing her as trustee.  This was a pendente lite order and "without prejudice."  It is not appealable.  Section 1304, subdivision (a) makes appealable any *"final order"* under section 17200 including an order removing a trustee (§ 17200, subd. (b)(1)).

*Disposition*

The judgment (order denying petition to disinherit respondent) is affirmed.  The purported appeal from the (order removing appellant as trustee) is dismissed.  In light of the settlement of the underlying litigation, we do not award costs.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

---

contest clause, and specifically identifying each such instrument." (*Ibid*.)

Glen M. Reiser, Judge

Superior Court County of Ventura

_____

       StakerLaw, Tax and Estate Planning and Brandon P. Johnson, Sasha L. Collins; Manfredi, Levine, Eccles, Miller & Lanson and Don Lanson for Appellant.

       Lowthorp, Richards, McMillan, Miller & Templeman and Cristian R. Arrieta for Petitioner and Respondents.