Filed 10/16/25  Estate of Jimenez CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| Estate of EVELYN GLORIA JIMENEZ, Deceased. | 2d Civil No. B343172 (Super. Ct. No. 202200564024PRLA) (Ventura County) |
| MICHELE DAWN BATES MARTINEZ et al., <br><br> Objectors and Respondents, <br><br> v. <br><br> ROBERT COFFMAN, <br><br> Objector and Appellant. | |

Robert Coffman (Robert) appeals an adverse ruling from a petition to determine heirship and entitlement to the Estate of Evelyn Gloria Jimenez (Decedent).[1]  We affirm.

---

[1] We refer to many of the parties or heirs by their first name not from disrespect, but to ease the reader's task.

This appeal concerns the matter of Robert's asserted entitlement to a one-sixth share of Decedent's intestate estate. Robert contends that genetic testing results from Ancestry.com revealed that he and Decedent had an aunt/nephew relationship and that he is the biological son of Decedent's brother. Robert rests his argument in part upon Probate Code section 6453, subdivision (b)(3).[2] We agree with the probate court that Robert has not established a natural parent/child relationship with Decedent's brother by clear and convincing evidence.

*FACTUAL AND PROCEDURAL HISTORY*

Decedent died intestate on January 22, 2022, leaving an estate in Ventura County, California. Decedent had no children, and her parents and husband predeceased her.

Decedent had a half-sister, Abigal Lea Escalera Bates, who predeceased her. Michele Dawn Bates Martinez (Michele) and Gregory Wayne Bates (Gregory) are the children of the half-sister. Decedent also had a half-brother, Louis Alberto Espriu (Louis), who predeceased her. Louis died on February 6, 1975. He had four children, two of whom have survived Decedent: Lewis Espriu, Jr. and Elena Espriu (Elena).

Robert and Elena were appointed co-administrators of Decedent's estate. They received letters of administration on July 7, 2022.

On July 11, 2024, Michele filed a petition to determine heirship and entitlement to estate pursuant to section 11700. Michele requested the probate court to divide Decedent's estate into five equal shares at the level of niece and nephew. In the petition, Michele asserted that Robert was not an issue of Louis.

---

[2] All statutory references are to the Probate Code unless stated otherwise.

2

Michele attached a copy of Robert's birth certificate which states a birth date of May 8, 1961, and lists his father as Robert Max Coffman. Michele also attached copies of probate documents from Louis's estate, including a final discharge and order dated February 14, 1984. These documents do not list Robert as an issue.

Robert filed opposition to the petition and asserted that he learned in 2011 that Robert Max Coffman was not his biological father when he submitted a DNA sample to Ancestry.com. Robert also stated that in 2017, Decedent and Elena submitted their DNA samples to Ancestry.com and learned that they were related to him as half-aunt and half-sister respectively. Robert supported his position with a screenshot of Ancestry.com's test results.

Michele filed a reply to Robert's opposition and asserted that Robert failed to establish a natural parent and child relationship between himself and Louis pursuant to the criteria of sections 6450 and 6453, subdivision (b)(3).

The probate court rejected Robert's arguments and granted the petition to determine heirship. The court concluded that section 6450, subdivision (a) provides that a natural parent and child relationship must exist between the putative parent and child for purposes of determining intestate succession. The court also relied upon section 6453, subdivision (b)(3) requiring proof of "genetic DNA evidence acquired during the parent's lifetime" to establish a natural parent and child relationship. In ruling, the court dismissed Robert's argument that the phrase "during the parent's lifetime" is permissive, noting that Louis died in 1975.

Robert appeals and challenges the probate court's order.

DISCUSSION

Robert contends that he is an heir to Decedent's estate because he is a biological nephew of Decedent. He relies upon section 6453, subdivision (b)(3).

The law of intestate succession is purely a matter of statutory regulation. We wrote in *Estate of Shellenbarger* (2008) 169 Cal.App.4th 894, 896, "One hundred years ago our Supreme Court warned that ' "[s]uccession to estates is purely a matter of statutory regulation, which cannot be changed by courts" ' and that ' "[i]t is vain to argue against the injustice of the rule . . . ." ' " Our Legislature has determined that the state's interest in providing for a just and orderly distribution of property at death requires a mechanism to discourage dubious paternity claims from being made after the father's death solely for inheritance purposes. (*Estate of Sanders* (1992) 2 Cal.App.4th 462, 475.)

Intestacy rights in California are determined based on the natural parent/child relationship and not on biology. (*Estate of Sanders, supra*, 2 Cal.App.4th 462, 471.) Section 6453 sets forth the conditions for determining whether a natural parent/child relationship exists. Section 6453 provides in part: "For the purpose of determining whether a person is a 'natural parent' as that term is used in this chapter: [¶] (a) A natural parent and child relationship is established where that relationship is presumed and not rebutted pursuant to the Uniform Parentage Act . . . . [¶] (b) A natural parent and child relationship may be established pursuant to any other provisions of the Uniform Parentage Act, except that the relationship may not be established by an action under subdivision (c) of Section 7630 of the Family Code unless any of the following conditions exist: [¶] (1) A court order was entered during the parent's lifetime

4

declaring parentage. [¶] (2) Parentage is established by clear and convincing evidence that the parent has openly held out the child as that parent's own. [¶] (3) It was impossible for the parent to hold out the child as that parent's own and parentage is established by clear and convincing evidence, which may include genetic DNA evidence acquired during the parent's lifetime."

The statutory interpretation of section 6453, subdivision (b)(3) is a pure question of law subject to our de novo review. (*Estate of Griswold* (2001) 25 Cal.4th 904, 910-911; *Estate of Sanders*, *supra*, 2 Cal.App.4th 462, 470.)

Here Robert has not shown that he established a natural parent/child relationship with Louis pursuant to section 6453, subdivisions (a) or (b). In particular, pursuant to subdivision (b)(3), Robert has not shown that it "was impossible" for Louis to hold him out as his own. At the time of Louis's death, Robert was 12 years old. Robert's mother could have brought a paternity action against Louis during Louis's lifetime, but she did not.

The plain language of section 6453, subdivision (b)(3) also requires proof of parentage by clear and convincing evidence which may include DNA evidence acquired during the parent's lifetime. Robert has not shown that the DNA evidence he obtained was acquired during Louis's lifetime. Moreover, permitting DNA evidence acquired after a parent's lifetime would render the statutory condition surplusage, a construction that should be avoided. (*Estate of Sanders*, *supra*, 2 Cal.App.4th 462, 470.) The legislative intent is clear – to discourage paternity claims made after the father's death for the sole purpose of inheritance. (*Id.* at p. 475.)

5

We need not decide the evidentiary value of the DNA evidence submitted by Robert because we have resolved the appeal on statutory grounds.

DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

BALTODANO, J.

6

Roger L. Lund, Judge

Superior Court County of Ventura

_____

Staker/Johnson Law Corporation and Samantha W. Koopman for Objector and Appellant.

Panitz & Kossoff and Kenneth W. Kossoff for Objectors and Respondents.